UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHERI ANN LUCAS,                                    Case No. 1:13-cv-483
     Plaintiff,                                    Spiegel, J.
                                                    Litkovitz, M.J.

     vs.


COMMISSIONER OF                                     **REPORT AND**
SOCIAL SECURITY,                                    **RECOMMENDATION**
     Defendant.

     Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 10), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply

(Doc. 18).

**I. Procedural Background**

     Plaintiff filed an application for DIB in November 2009, alleging disability since

December 21, 2007, due to neuropathy, myopathy and fibromyalgia. (Tr. 150). Plaintiff's

application was denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a *de novo* hearing before administrative law judge (ALJ) Henry B. Wansker.

Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On October 12,

2011, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for

review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2

2004). Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on September 30, 2011.

2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of December 21, 2007 through her date last insured of September 30, 2011 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: fibromyalgia, idiopathic peripheral neuropathy, pain disorder with medical and psychological features, status-post partial gastrectomy, chronic venous insufficiency of the lower extremities, and small fiber sensory neuropathy (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] find[s] that, through the date last insured, the [plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can lift and carry a maximum of fifty pounds occasionally and ten pounds frequently. She can stand and walk for six of eight hours per workday, in two-hour increments, and can sit for six of eight hours per workday, in two-hour increments. She may not be exposed to airborne respiratory irritants, to hazardous machinery or to unprotected heights, nor may she be exposed to, or operate motorized vehicular equipment. She can perform simple, routine, repetitive tasks involving no strict time or production demands, and relatively static work processes and procedures. She may be expected to be absent from work due to illness one day per month.

3

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work. (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] . . . 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568).

10. Through the dated last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from December 21, 2007, the alleged onset date, through September 30, 2011, the date last insured (20 CFR 404.1520(g)).

(Tr. 16-23).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[1] Plaintiff has past relevant work as an auto parts assembler, warehouse worker, and loader, which she performed at the medium level.  (Tr. 22).
[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform unskilled light jobs such as assembler, sales attendant and counter attendant (600 regional jobs and 90,000 national jobs), and unskilled sedentary jobs such as telephone clerk, inspector and hand packer (450 regional jobs and 67,500 national jobs).  (Tr. 23).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

The medical findings and opinions of record have been adequately summarized in the

plaintiff's Statement of Errors (Doc. 10 at 2-4) and will not be repeated here. Where applicable,

the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that the ALJ erred by (1) failing to properly evaluate plaintiff's

credibility, and (2) mischaracterizing and failing to adequately consider the history of her medical

treatment for fibromyalgia symptoms, resulting in credibility and RFC findings which are not

supported by substantial evidence. (Doc. 10). In response, the Commissioner argues that

substantial evidence supports the ALJ's credibility and RFC findings, as well as the ALJ's

decisions as to the weight to afford the various medical source opinions of record. (Doc. 15).

**1. The ALJ's credibility and RFC findings are not supported by substantial evidence.**

Plaintiff alleges in support of her first assignment of error that the ALJ's reasons for

discounting her credibility are not substantially supported by the evidence of record. Plaintiff

contends that the ALJ mischaracterized evidence of her daily activities and selectively considered

only that testimony which supported a finding of non-disability; the ALJ inaccurately

characterized her cognition and demeanor at the hearing; and the ALJ erroneously relied on the

failure of any medical source to offer an opinion on the ultimate conclusion of disability, which

plaintiff notes is a matter reserved to the judgment of the Commissioner. In support of her

second assignment of error, plaintiff alleges that in assessing her credibility, the ALJ failed to

consider the longitudinal record of plaintiff's treatment history and symptoms. Plaintiff

specifically contends that the ALJ erroneously overemphasized the lack of objective evidence;

mischaracterized plaintiff's treatment history as indicating that plaintiff's symptoms were

generally successfully controlled; and gave no specific reasons for concluding that the treatment

notes do not support plaintiff's allegations of debilitating pain and other symptoms. Plaintiff

contends that as a cumulative result of the above errors, the ALJ formulated an unsupported RFC

finding which fails to account for plaintiff's need to be absent from work five days per month.

Each assignment of error relates to the ALJ's failure to properly analyze plaintiff's

disability claim premised on a diagnosis of fibromyalgia and subjective complaints of

accompanying symptoms. Accordingly, the Court has considered the two assignments together

and concludes for the reasons discussed below that the ALJ's credibility analysis and RFC

6

determination are flawed and led to a non-disability determination which is not supported by substantial evidence.

### a. Analysis of disability claims related to fibromyalgia

The Sixth Circuit has explained that fibromyalgia "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Sec'y of Health and Human Services*, 854 F.2d 815, 817 (6th Cir. 1988). Further, Social Security Ruling 12-2p, which provides guidance on how the agency both develops "evidence to establish that a person has a medically determinable impairment of fibromyalgia" and evaluates fibromyalgia in disability claims, describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."[3] SSR 12-2p, 2012 WL 3017612 (July 25, 2012).

The Sixth Circuit has recognized that "disability claims related to fibromyalgia are related to the *symptoms* associated with the condition - including complaints of pain, stiffness, fatigue, and inability to concentrate - rather than the underlying condition itself." *Kalmbach v. Commissioner of Social Security*, 409 F. App'x 852, 862 (6th Cir. 2011) (emphasis in original) (citing *Rogers,* 486 F.3d at 247) (citing 20 C.F.R. § 416.929); *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 686 (6th Cir. 1992) (noting that subjective complaints of pain may support

---

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 273, n. 1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). SSR 12-2p became effective and thus "binding" on the Administration on July 25, 2012. Although SSR 12-2p was not in effect when the ALJ issued his decision in this case, and therefore is not specifically applicable here, the Ruling can assist the Court in the analysis of plaintiff's claim. *See Attendorn v. Commissioner of Social Sec.,* No. 1:12-cv-5, 2012 WL 6680375, at *7 n.5 (N.D. N.Y. Nov. 2, 2012).

a claim for disability)). *See also* SSR 12-2p (listing among the diagnostic criteria for fibromyalgia a history of widespread pain and other symptoms including manifestations of fatigue, waking unrefreshed, anxiety disorder, and irritable bowel syndrome). In such a case where a claimant's symptoms form the basis of the disability claim, the Court employs a two-part analysis to evaluate complaints of disabling pain and other symptoms. *Kalmbach,* 409 F. App'x at 862 (citing 20 C.F.R. § 416.929(a); *Rogers,* 486 F.3d at 247; *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994)).

First, the ALJ should ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. 416.929(a)). Second, if the ALJ finds that such an impairment exists, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* (citing 20 C.F.R. 416.929(a)). Relevant factors to be considered in the evaluation of the claimant's symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the symptoms; other treatment the claimant has undergone to relieve symptoms; additional measures the claimant had taken to relieve her symptoms; and any other factors bearing on the claimant's ability to perform basic functions. *Id.* (citing 20 C.F.R. 416.929(a); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2-3 (July 2, 1996)).

The ALJ and not the reviewing court is tasked with evaluating the claimant's credibility. *Id.* (citations omitted). Nonetheless, SSR 96-7p tasks the ALJ with explaining his credibility determinations with sufficient specificity as "to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. As the Sixth Circuit noted in *Rogers*: "[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Id.* (citing *Hurst v. Sec'y of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir. 1985)).

The Sixth Circuit has recognized that fibromyalgia is not amenable to objective diagnosis and that standard clinical tests such as x-rays and CT scans are "not highly relevant in diagnosing [fibromyalgia][4] or its severity." *Preston*, 854 F.2d at 820. The Court in *Preston* explained: "In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients." *Id.* at 817-18. Other courts have likewise recognized that fibromyalgia can be disabling even in the absence of objectively measurable signs and symptoms. *Reardon v. Prudential Ins. Co. of America,* No. 1:05cv178, 2007 WL 894475, *14 (S.D. Ohio March 21, 2007) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (fibromyalgia is a "disabling impairment" that can qualify an individual for disability payments even though "there are no objective tests which can conclusively confirm the disease."); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and,

---

[4] The Sixth Circuit in *Preston* used the term "fibrositis." The preferred term is currently fibromyalgia rather than the older terms fibrositis and fibromyositis. *See* "The Merck Manual" (17th ed. 1999), p. 481.

of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."); *Clark v. Aetna Life Ins. Co*., 395 F. Supp.2d 589, 610 (W.D. Mich. 2005); *Rodriguez v. McGraw-Hill Cos. Long Term Disability Plan*, 297 F.Supp.2d 676, 679 (S.D. N.Y. 2004)).

In view of the nature of plaintiff's symptoms associated with fibromyalgia, the fundamental issues in this case relate to plaintiff's ability to perform work on a sustained basis without an unreasonable number of absences. In accordance with SSR 96-8p, RFC is measured by an "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8, 1996 WL 374184, at *1. "The Commissioner takes the position that at step five of the sequential disability determination, only a claimant's ability to perform full-time work will permit an ALJ to render a decision of 'not disabled.'" *Lawson v. Astrue*, 695 F. Supp.2d 729, 748 (S.D. Ohio 2010) (citations omitted)). Stated otherwise, "[a] claimant is disabled if he cannot perform full-time work." *Id*. (citing SSR 96-8p) (additional citations omitted).

**b. The ALJ's analysis of the evidence related to plaintiff's claim of disability premised on fibromyalgia did not comport with the governing law.**

The ALJ discounted plaintiff's credibility and assessed her as capable of performing a restricted range of medium work. In making this determination, the ALJ relied on findings that: (1) plaintiff's description of her daily activities was inconsistent with her allegations of disabling symptoms and limitations; (2) plaintiff's allegations of pain were inconsistent with her cognition and demeanor at the hearing; (3) no medical source opined that plaintiff was disabled; and (4) the objective medical findings failed to provide strong support for plaintiff's allegations of disabling

10

symptoms and limitations resulting from her severe impairments. (Tr. 19-20). A review of the record shows that the ALJ's assessment of plaintiff's subjective pain complaints in light of the objective medical findings, her description of her daily activities, and the medical source opinions of record did not comport with the Social Security regulations and governing law and that the ALJ's findings are not substantially supported by the record.

### i. The ALJ's evaluation of the objective medical evidence.

The ALJ found that "the objective findings in this case fail to provide strong support for the [plaintiff's] allegations of disabling symptoms and limitations resulting from her fibromyalgia, idiopathic peripheral neuropathy, pain disorder with medical and psychological features, status-post partial gastrectomy, chronic venous insufficiency of the lower extremities, and small fiber sensory neuropathy." (Tr. 20). In support of his finding, the ALJ noted that plaintiff has undergone various forms of treatment for her allegedly disabling symptoms, which the ALJ found would normally weigh in plaintiff's favor; however, the ALJ also found that the record revealed that the treatment had been "generally successful in controlling those symptoms." (*Id.*). The ALJ's finding is a gross mischaracterization of the record. The only record evidence the ALJ cited in support of this finding was plaintiff's testimony at the ALJ hearing that her "small fiber sensory neuropathy and her prickling pain were well-controlled with Lyrica [Tr. 444-458]." (Tr. 20). While plaintiff did testify that Lyrica helped with her prickling pain, she also testified the medication did not relieve the muscle pain from her fibromyalgia and that she took Vicodin in addition to Lyrica for that pain. (Tr. 54). Plaintiff testified that her fibromyalgia made her feel "kind of achy all of the time" and that she was in bed sick four to five days a month as a result of the disease. (*Id.*). She described the symptoms during these periods of

11

exacerbation as "just like a bad flu." (*Id.*). Plaintiff testified that the medication reduced her pain "[a] little" but did not take the pain away. (Tr. 57). Plaintiff further testified that she always feels fatigued. (Tr. 59). The ALJ ignored this testimony by plaintiff that the pain and other symptoms associated with her fibromyalgia had persisted despite several years of treatment at the Cleveland Clinic and ongoing efforts to treat her symptoms with various medications.

Moreover, the ALJ ignored the treatment records which show that plaintiff consistently complained about these symptoms to her treating physicians at the Cleveland Clinic. The Cleveland Clinic records show that on February 11, 2008, Dr. Lan Zhou, M.D., completed a physical examination of plaintiff, a rheumatology history was taken, and testing and lab work were performed. (Tr. 328-37). Plaintiff complained of myalgias and a rash. (Tr. 328). Plaintiff reported that Lyrica helped relieve her pinprick sensations, but she reported regular episodes of muscle aches and pain which caused her to be restricted to bed for multiple days and resulted in weight loss. (*Id.*). A weight loss of six pounds since plaintiff's last visit was recorded. (*Id.*). Plaintiff also complained of arthralgias in her ankles, knees, wrists and shoulders, and she reported that she slept poorly due to pain. (*Id.*). Plaintiff described her pain as constant throbbing pain in her legs, back and arms of two-years' duration which she rated at a 9-10 severity level on a 10-point scale, and she reported difficulty performing or completing routine daily living activities. (Tr. 335). Testing showed a severe length-dependent small fiber sensory neuropathy. (Tr. 328). In May 2009, Dr. Zhou assessed plaintiff's symptoms as worse and noted a rash which he described as "impressive." (Tr. 365). Treatment notes dated September 2009 report a two-year history of muscle pain and tenderness and a diagnosis of possible fibromyalgia recently made by plaintiff's neurologists at Cleveland Clinic. (Tr. 376). Plaintiff reported

12

worsening arm pain and constant, unchanged leg pain.  (*Id.*).  On March 30, 2010, plaintiff

reported that physical activity increased her pain and that Lyrica, Vicodin and rest helped relieve

her pain.  (Tr. 444-45).  On July 15, 2010, when evaluated at the Cleveland Clinic Foundation's

Pain Management Center for arm, leg and back pain (Tr. 574-76), plaintiff reported that the pain

had started gradually five years earlier and the symptoms had been worsening.  (Tr. 574).

Plaintiff described the pain as an aching throbbing pain, which she rated as 7/10 on her best day

and 10/10 on her worst day.  She described the pain as exacerbated by physical and household

activity and as worsening throughout the day.  The pain was relieved by hot baths and heating

pads.  According to the treatment notes, plaintiff had experienced rashes for five years and

occasional swelling in her ankles and knee joints.  Plaintiff reported poor sleep habits and stated

that she got four hours of uninterrupted sleep per night.  Plaintiff was diagnosed as meeting the

criteria for fibromyalgia.  (Tr. 576).  The notes state that Cymbalta and Lyrica had not resulted in

any improvement in her pain level but that plaintiff was not a candidate for any injections or

specific medical treatment in addition to the medications she was then receiving.  A chronic pain

rehabilitation program was recommended and plaintiff was encouraged to continue physical

activity as tolerated.  (*Id.*).  These treatment records demonstrate that plaintiff's treating

physicians at the Cleveland Clinic have made sustained efforts to treat plaintiff's symptoms with

a number of different medications and methods but that plaintiff's pain, muscle aches, and

fatigue have persisted and have actually worsened.  Thus, the ALJ's finding that the "various

forms of treatment" plaintiff has received for her "allegedly disabling symptoms" have "been

generally successful in controlling those symptoms" (Tr. 20) finds no support in record.

13

In addition to erroneously determining that plaintiff's pain and other symptoms have generally been successfully controlled, the ALJ erred by relying on a lack of objective test results and clinical findings to discount plaintiff's credibility. (Tr. 20). In his decision, the ALJ listed a plethora of test results and clinical findings which he considered to be related to plaintiff's fibromyalgia, idiopathic peripheral neuropathy, chronic venous insufficiency of the lower extremities, and small fiber sensory neuropathy, consisting of the following: (1) an April 2006 EMG which showed no electrophysiologic evidence of a large fiber neuropathy involving the right lower extremity (Tr. 314); (2) an EMG which showed no evidence of a generalized peripheral polyneuropathy (Tr. 444-58); (3) normal strength, reflexes, gait and range of motion findings made during a January 2007 physical examination (Tr. 298, 301, 313, 314); (4) a finding of multiple tender spots; (5) a hepatobiliary scan performed in December 2008 which showed no afferent loop obstruction (Tr. 312-420); (6) multiple syncope-tilt tests which failed to produce findings of dizziness or light-headedness (Tr. 312-420); (7) multiple brain scans and tests which yielded normal results (Tr. 312-420, 294-311, 265-78, 436-43); (8) a skin biopsy and QSART [Quantitative Sudomotor Axon Reflex Test] which showed severe length-dependent small fiber sensory neuropathy (Tr. 444-58); (9) a chest x-ray which showed the heart to be normal (Tr. 308); (10) normal blood pressure and pulse readings (Tr. 298); (11) a finding that plaintiff had pain to light touch in the bilateral lower extremities during a physical examination (Tr. 312-420); and (12) findings of no physical abnormalities or sensory or motor deficits made by the consultative examiner (Tr. 436-43). (Tr. 20). The ALJ did not go beyond simply listing these test results and clinical findings and explain how any of them bore on the credibility of plaintiff's complaints of pain and other symptoms related to her fibromyalgia.

14

Further, insofar as the ALJ relied on negative test results and clinical findings to discount plaintiff's subjective complaints related to her fibromyalgia, the ALJ demonstrated a fundamental misunderstanding of the disease. The ALJ failed to recognize that objective tests are of little relevance in determining the existence or severity of fibromyalgia, which cannot be confirmed by objective findings. *See Rogers*, 486 F.3d at 245 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant") (citing *Preston*, 854 F.2d at 820). *See also Kalmbach*, 409 F. App'x at 864 (the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant); *Lawson*, 695 F. Supp.2d at 735. As in *Rogers*, the ALJ here "did not discuss, let alone apply, the correct standard for assessing a diagnosis of fibromyalgia in his decision" and instead relied on normal test results and normal physical findings, *i.e.*, normal "strength, reflexes, gait, and range of motion," none of which are relevant to the severity of plaintiff's fibromyalgia symptoms. *See Germany-Johnson v. Commissioner of Social Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 245). Indeed, the Sixth Circuit has recognized that persons suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston*, 854 F.2d at 820. Accordingly, the ALJ's reliance on objective findings which purportedly failed to corroborate plaintiff's subjective complaints of pain and other symptoms was in error under the governing case law.

### ii. The ALJ reliance on plaintiff's description of her daily activities

The ALJ's credibility assessment is not supported by substantial evidence for the additional reason that the ALJ erroneously relied on plaintiff's description of her daily activities

15

in discounting her credibility. The ALJ noted that plaintiff alleged that she "experiences pain, cannot walk for more than thirty minutes, cannot sit for more than twenty minutes, and would need to miss work four to five days per month [Tr. 194]." (Tr. 19). The ALJ found these allegations to be inconsistent with plaintiff's daily activities as she "exercises, watches television, does household chores, does laundry, does dishes, and takes out the trash [Tr. 195-96]." (Tr. 19). However, the ALJ did not explain how these minimal daily activities are inconsistent with plaintiff's allegations of disabling symptoms, and neither does there appear to be any inconsistency between the daily activities plaintiff described and her allegations of disabling pain and other symptoms. *Cf. Rogers*, 486 F.3d at 248-49 (finding that the plaintiff's "somewhat minimal daily functions" of driving, cleaning her apartment, caring for two dogs, doing laundry, read, performin stretching exercises, and watching the news, were not "comparable to typical work activities" and did not justify the ALJ's decision to discredit her testimony); *Kalmbach*, 409 F. App'x at 864 (the plaintiff's minimal activities of going to the grocery store, the pharmacy, and church, usually preparing her own meals and dressing herself without assistance, and driving for less than thirty minutes per day were "hardly consistent with eight hours' worth of typical work activities.").

Moreover, the ALJ grossly mischaracterized plaintiff's description of her daily activities by disregarding the waxing and waning nature of her symptoms and plaintiff's statements that physical and household activities exacerbate her pain. *See* SSR 12-2p, 2012 WL 3017612, at *6 (recognizing that "the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"). When describing her daily activities, plaintiff stated that she can cook, wash dishes, and map and vacuum floors *if* she is feeling well, but that if she is not feeling

16

well she "cannot get out of bed except to use the bathroom." (Tr. 195-96). Plaintiff also stated

that if she lifted or went grocery shopping, she was usually in pain afterwards. (Tr. 195).

Plaintiff distinguished her good days from the four or five bad days of the month when she felt

bad, stating that on her bad days she is unable to walk even one block and she gets up only to use

the bathroom. (Tr. 194). Plaintiff testified at the ALJ hearing that her rheumatologist had

recommended that she exercise as she was able and to stop when it hurt, and that she is able to

exercise only four to five times a month by walking approximately one-half mile on the

treadmill. (Tr. 54-55). Plaintiff's testimony is consistent with her reports to her treating sources

at the Cleveland Clinic. (*See* Tr. 335: plaintiff reported in February 2008 that she had difficulty

completing activities of daily living; Tr. 444: plaintiff reported in March 2010 that physical

activity increased her pain; Tr. 574: plaintiff reported in July 2010 that physical activity and

household cleaning exacerbated her pain). The ALJ erred by ignoring this testimony and failing

to consider how physical activity impacted plaintiff's symptoms. *See Rogers*, 486 F.3d at 248-

49. For these reasons, the ALJ's decision to discount plaintiff's credibility based on her ability to

perform the daily activities he listed was not reasonable.

**iii. The ALJ's reliance on the medical opinion evidence.**

The ALJ found that plaintiff's credibility was weakened by the fact no medical source

opined that she was disabled. (Tr. 19). The ALJ also found that inconsistencies between the

medical evidence and her allegations weakened her credibility. (Tr. 21). The ALJ's decision in

this regard is not substantially supported because the ALJ did not properly weigh the medical

source opinions which assessed plaintiff as capable of performing some level of sustained work

activity.

17

If the ALJ does not afford a treating source's opinion controlling weight, the ALJ must "must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c). Further, when the ALJ does not give a treating source opinion controlling weight, the ALJ will generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined the claimant. 20 C.F.R. § 404.1527(c)(1)(2); *Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 513 (6th Cir. 2010). The ALJ weighs any medical opinions by examining and non-examining sources based on the physician's examining relationship (or lack thereof), specialization, consistency, supportability of the opinion, and other factors "which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c). *See also* SSR 96-6p.

Here, the only treating physician who completed a physical RFC assessment was Dr. Anita Reddy, M.D., plaintiff's treating pulmonologist. (Tr. 499-502). In her "Pulmonary Residual Functional Capacity Questionnaire" dated September 15, 2011, Dr. Reddy indicated that she had seen plaintiff approximately once every 6 months for 20 minutes beginning November 2010. (*Id.*). Dr. Reddy opined that plaintiff was able to lift/carry 50 pounds occasionally and 20 pounds frequently and sit and stand/walk for 6 hours each in an 8-hour workday. (*Id.*). Dr. Reddy based her assessment on a diagnosis of mild emphysema with symptoms of shortness of breath and coughing. (Tr. 499). The ALJ declined to give Dr. Reddy's opinion "controlling weight" because he found the opinion was not "wholly supported by the

18

objective medical evidence"; instead, the ALJ gave the opinion "great weight" based solely on "the longitudinal relationship between doctor and patient[.]" (Tr. 21). However, the ALJ did not specifically consider any of the regulatory factors in weighing this treating source's opinion, including the nature of the treatment relationship, the frequency of examination, and the physician's specialization. *See* 20 C.F.R. § 404.1527(c). In fact, it appears that Dr. Reddy had seen plaintiff only twice over a one-year period at the time she completed her assessment; she had treated plaintiff only for her pulmonary impairment; and she accounted for the symptoms related only to plaintiff's pulmonary impairment when assessing plaintiff's functional limitations. (Tr. 499-501). There is no indication that Dr. Reddy considered plaintiff's fibromyalgia in rendering her opinion. To the contrary, Dr. Reddy acknowledged at the conclusion of the assessment that plaintiff also suffers from anxiety and fibromyalgia and that these conditions would affect her ability "to work at a regular job on a sustained basis." (Tr. 502). Accordingly, the ALJ did not properly weigh Dr. Reddy's assessment and did not reasonably rely on Dr. Reddy's findings or failure to assess plaintiff as disabled to discount plaintiff's credibility.

Two state agency reviewing physicians, Dr. Gerald Klyop, M.D., and Dr. W. Jerry McCloud, M.D., also assessed physical limitations. Dr. Klyop opined in April 2010 that plaintiff could lift/carry and push/pull 50 pounds occasionally and 25 pounds frequently; she could sit and stand/walk for 6 hours each in an 8-hour workday; and she should avoid all exposure to unprotected heights or dangerous machinery and never climb ladders/rope/scaffolds. (Tr. 459-66). Dr. McCloud affirmed Dr. Klyop's RFC assessment upon review in July 2010. (Tr. 467). The ALJ gave these assessments "some weight" because he found that "the medical evidence of record suggests the claimant is more limited" than these physicians found her to be. (Tr. 21).

19

However, the ALJ also concluded that their opinions were internally consistent and consistent with the evidence as a whole. (*Id*.). The ALJ did not conduct any analysis of the non-examining physicians' findings as compared to the medical evidence of record and did not mention any of the regulatory factors to be considered in weighing their opinions. Accordingly, the ALJ's decision to give the non-examining physicians' opinions "some weight" and to discount plaintiff's credibility based on their assessments is not substantially supported by the record.

Finally, the ALJ gave "little weight" to the opinion of the consultative examining physician, Dr. Herbert A. Grodner, M.D., who examined plaintiff in March 2010. (Tr. 20, citing Tr. 436-42). Dr. Grodner reported that plaintiff had experienced syncopal episodes in the past and possibly some type of cardiac arrhythmia, and she has fibromyalgia. (Tr. 438). Although Dr. Grodner found that her physical examination was unremarkable, he was uncomfortable based on her episodes of syncope "in stating that [she] could perform any type of physical activities." (*Id*.). Dr. Grodner opined that plaintiff should be limited to sedentary activity "as long as she was in a situation where she was not in harms [sic] way" because of indications she had some type of cardiac arrhythmia which had caused syncopal episodes in the past. (*Id*.). The ALJ stated he was giving Dr. Grodner's opinion "little weight" because the medical evidence of record suggests plaintiff is "substantially less limited than assessed." (Tr. 21). The ALJ also found, however, that Dr. Grodner's opinion generally supports the RFC finding for a range of medium work. (*Id*.). Aside from the apparent inconsistency of these conclusions, the ALJ failed to consider the regulatory factors and did not explain how the medical evidence either supported or was inconsistent with Dr. Grodner's opinion. Accordingly, Dr. Grodner's opinion does not substantially support the ALJ's credibility finding.

### iv. The first and second assignments of error should be sustained.

The ALJ's assessment of plaintiff's subjective complaints in light of the objective medical findings, her description of her daily activities, and the medical source opinions of record does not comport with the applicable law and regulations. The resulting credibility and RFC findings are not substantially supported by the evidence of record. Plaintiff's first and second assignments of errors should be sustained.

### E. Conclusion

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Reversal and remand are required for a proper assessment of plaintiff's credibility and residual functional capacity. On remand, the ALJ should elicit additional medical expert and vocational expert testimony as warranted.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g).

Date: 7/18/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHERI ANN LUCAS,                          Case No. 1:13-cv-483
    Plaintiff,                            Spiegel, J.
                                          Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).